UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

WELLS FARGO BANK, N.A.,

        Plaintiff,

  v.

WEST LIBERTY PROPERTIES,
LTD, ET AL.,

        Defendants.

------------------------------------------------------

CASE NO. 1:11-CV-02494

OPINION & ORDER
[Resolving Docs. No. 47; 48; 49; & 50]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Before the Court are four motions from Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") and Defendants Gregory Happ, Susan Happ (the "Happs"), and West Liberty Properties LTD ("West Liberty"). On October 2, 2012, Wells Fargo moved the Court to enforce its memorialization of the parties' settlement agreement. [Doc. 47.] In response, on October 12, 2012, the Happs and West Liberty filed a motion to seal and strike documents from the record, a motion for an extension of time to respond to Wells Fargo's motion to enforce, and a motion to enforce the parties' agreement to dismiss. [Docs. 48; 49; 50.]

    Because Wells Fargo and the Happs entered into a binding settlement agreement that the Court will now enforce, Wells Fargo's motion is **GRANTED** to the extent it requests enforcement of the terms contained in the transcript of the parties' September 6, 2012, mediation with Magistrate Judge Nancy Vecchiarelli (the "Mediation Agreement"). [Doc. 44.] As a result, the Happs's motion to seal and strike documents, motion for extension of time, and motion to enforce the parties'

Case No. 1:11-CV-02494
Gwin, J.

agreement to dismiss are moot and are thus **DENIED**.

# I. Background

This lawsuit began in November 2011 when Wells Fargo sued the Happs and West Liberty for breach of contract, fraudulent conveyance, and foreclosure. [Doc. 1 at 1.] The underlying dispute involves the business relationship between Wells Fargo and the Happs. [*Id.*] Specifically, in January 2007, Wells Fargo provided Mr. Happ with approximately $390,000 in business financing. [Doc. 31-1 at 2.] In return, Mr. Happ agreed to pay Wells Fargo the principal sum of $390,000, plus interest on the outstanding balance at 7.890% per year, in monthly installments. [*Id.*] The parties memorialized their deal in a "Business Lending Confirmation Letter" and a "Business Real Estate Financing Disclosure," together ("the Loan Documents"). [*Id.*]

To secure the loan, the Happs executed and provided to Wells Fargo an "Open-End Mortgage and Assignment of Rents" for the property located at 238 W. Liberty Street, Medina, Ohio (the "Secured Property"). [Doc. 31-1 at 2.] Wells Fargo says that Mr. Happ has been in default under the Loan Documents since approximately July 2010 because he failed to make monthly payments of principal and interest. [*Id.* at 3.] Wells Fargo also says that, after it notified Mr. Happ about his default, he transferred the Secured Property to West Liberty without notifying Wells Fargo or obtaining its consent. [*Id.*]

In June 2012, the parties attended a status conference with this Court. [Doc. 37.] At the conference, the parties agreed to accept this Court's referral to mediation. [Doc. 38.] On September 6, 2012, the parties mediated their dispute before Magistrate Judge Nancy Vecchiarelli. [Doc. 43.] Saber W. VanDetta and Alana C. Jochum attended as counsel on behalf of Wells Fargo. [Doc. 44

Case No. 1:11-CV-02494
Gwin, J.

at 1.] John Williams attended as Wells Fargo's corporate representative. [*Id.* at 1.] The Happs attended the mediation along with their counsel Bruce Hadden. [*Id.*] At the end of the mediation, the parties entered into a settlement agreement that resolved all the material terms. [*Id.* at 13.] Magistrate Judge Vecchiarelli put those terms on the record. [Doc. 44.] The relevant portions of the transcript read as follows:

> THE COURT: Let me start with this is going to be a binding and enforceable settlement agreement . . . .
> . . . [N]o matter what happens in this case, the party -- whether or not the settlement is effectuated because it's contingent, there's a right to rescind the agreement on the part of the defendants after speaking with their bankruptcy and tax attorneys or consultants, but regardless of that right to rescind, the parties . . . have agreed that the transaction between the defendant Mr. Happ and West Liberty Properties Limited will be unwound, meaning the property will . . . be transferred back to [Mr. Happ].
> . . . .
> All right. Here [are] the terms . . . Mr. Happ has the right to sell the property for over $275,000. He has 180 days to sell that property.
> He will be responsible for any deficiency between the amount owed, which will continue to accrue at the rate of approximately $75 a day, but the amount of the deficiency will be reduced by $60,000 and that's in essence the plaintiff . . . giving a $60,000 credit if he sells the property, that's a credit towards the deficiency.
> The deficiency will be funded by a note . . . .
> . . . .
> THE COURT: . . . [The note] will be payable over six years at the rate of 7.5%. I mentioned that he had six months to sell . . . or 180 days. It's actually 180 days from the date of the agreement.
> The commission, the cost of the commission for sale . . . would be split by the defendants and the plaintiffs.
> The taxes would be paid by the defendants, and the amount would be financed or could be financed, if they wanted, through this same note that we talked about.
> [Wells Fargo] will issue a 1099 for the credit towards the deficiency.
> The defendant, after the transaction is unwound, will give the . . . plaintiffs a deed in lieu of foreclosure that will be held in escrow and will be filed if the defendant Mr. Happ does not sell the property.
> . . . [T]he Happs will be required to vacate the premises within 30 days from the date the deed is filed.
> In the event Mr. Happ does not sell the property and [Wells Fargo goes] to the deed in lieu of foreclosure, [Mr. Happ] will be responsible for the full deficiency[,] . . . the deficiency being the amount that's owed on the existing note, less the appraised value of . . . $275,000 for the property. And I guess the bank would give him a note for that difference

Case No. 1:11-CV-02494
Gwin, J.

    on the same term, seven-and-a-half percent for six years.
        MS. VanDETTA: That's correct.
        THE COURT: . . . [T]his is an agreement that's entered into between and among all the parties, but the defendants have the right to rescind this agreement by . . . .
    . . . .
        THE COURT: [] Monday, September 10th at 5:00 p.m., and if you rescind, it should be something filed with the Court . . . .
    . . . .[1]
        All right. Let me ask, first, Mr. Hadden, did I misstate any of the terms or is there anything you want to add or clarify?
        MR. HADDEN: I just had a question on a figure, on the payment of the taxes.
        Can the taxes be paid out of -- if there's a sale, can the taxes be paid out of the sale and then that would -- that would --
        THE COURT: And then added to the note?
        MR. HADDEN: And added to the deficiency, so he doesn't have to pay.
        THE COURT: So he doesn't have to come up with the cash.
        MR. WILLIAMS: That was our expectation throughout this negotiating process.
        MS. VanDETTA: So yes.
        THE COURT: Okay. So they've agreed to that.
        Anything else you'd like to question?
        MR. HADDEN: The deed in escrow, could I hold the deed in escrow?
    . . . .
        THE COURT: . . . How about the parties will give the deed that's to be held in escrow to an agreed upon third party, okay? Not the Court.
        MR. WILLIAMS: That's fine.
    . . . .
        MS. VanDETTA: There is one substantive element that I think you forgot to mention which is [Mr. Happ] would still get a $60,000 credit towards the deficiency even if a deed in lieu is accepted after 180 days and no sale of property.
        THE COURT: Okay.
    . . . .
        THE COURT: . . . [I]f he doesn't sell the property, then you can go ahead and file the deed that is being held in escrow.
        MS. VanDETTA: Um-hmm.
        THE COURT: They'll vacate within 30 days of the filing of the deed. The amount due and owing would be -- is it a judgment?
        MS. VanDETTA: The amount due and owing would be the deficiency which would be determined from the amount of the appraisal, which is 275, after, after being subtracted from the total amount due which would be at today's date it's 401,000 and change. The amount grows by approximately $75 a day.

---

[1] Magistrate Judge Vecchiarelli and the parties discussed Mr. Happ unwinding the transfer of the Secured Property to West Liberty. [Doc. 44 at 5-6.] As best the Court can tell, Mr. Happ unwound the transfer "on or about September 7, 2012." [Doc. 47-1 at 9.]

Case No. 1:11-CV-02494
Gwin, J.

> So the 275 would be deducted from the 40, let's just say 5 for even math, that would be the amount of the deficiency, after the deed in lieu is accepted and the $60,000 credit towards that deficiency would be issued, and the remaining amount of the deficiency plus the taxes owing at that time would be the subject of a note on the same terms as discussed, 7.5% interest over six years.
> THE COURT: Okay.
> MS. VanDETTA: And we would -- so we would not ask for a monetary judgment at that time.
> As far as the deed in lieu filing, are you asking for a judgment for foreclosure?
> THE COURT: No.
> MS. VanDETTA: I think we will just take the deed in lieu.
> THE COURT: And you'll issue a 1099?
> MS. VanDETTA: Yes.
> THE COURT: And the commission is going to be paid how?
> MS. JOCHUM: Split in half.
> THE COURT: Not how it's allocated. How is it paid?
> MS. VanDETTA: We would do the same as the taxes, we would tack on Mr. Happ's 50 percent to the deficiency and that would be subject to the note.
> THE COURT: Unless he wants to come up with the cash.
> MS. VanDETTA: Sure. That's always an option.
> . . . .[2]
> MS. VanDETTA: I think we've agreed that he would vacate within 30 days of our filing of the deed in lieu if he's unable to sell within 180 days. I want to make sure that's on the record. And also a 1099 will be issued whether a deed in lieu is ultimately accepted or whether the property is sold.
> THE COURT: For the 60,000 credit.
> MS. VanDETTA: Exactly.

[Doc. 44 at 1-13.]

After the mediation, the parties informed the Court that they had reached a settlement and that they had resolved all of their outstanding issues. [Doc. 45.] Thus on September 11, 2012, the Court marked the docket settled and dismissed the parties claims and counterclaims with prejudice. [*Id.*] Yet by late September, Wells Fargo and the Happs had failed to memorialize a written copy of their agreement. [Doc. 47-1 at 1.] Thus on October 1, 2012, Wells Fargo filed a motion to

---

[2] Magistrate Judge Vecchiarelli and the parties discussed filing a "joint stipulated dismissal." [Doc. 44 at 11.] The Court however, upon information that the parties had reached a settlement, marked the docket settled and dismissed the parties claims and counterclaims with prejudice. [Doc. 45.]

Case No. 1:11-CV-02494
Gwin, J.

enforce its proposed memorialization of the settlement agreement or alternatively to grant Wells Fargo's motion for judgement on the pleadings. [Doc. 47.] In support of its motion, Wells Fargo filed copies of the parties' September 2012 email exchanges and proposed memorializations of the settlement agreement. [Docs. 47-3; 47-4; 47-5; 47-6; 47-7.] The Happs and West Liberty say that Wells Fargo's filing violated the confidentiality protections given to mediation communications. [Doc. 48-1 at 1-2.] Thus, the Happs and West Liberty filed three motions: (1) a motion requesting the Court seal and strike the documents from the docket, seeking an order of confidentiality, and requesting the Court's conditional recusal;[3/] (2) a motion requesting an extension of time to respond to Wells Fargo's motion to enforce the settlement; and (3) a motion to enforce the parties' agreement to dismiss. [Docs. 48; 49; 50.]

## II. Law & Analysis

A federal court maintains jurisdiction to enforce a settlement agreement when the parties' obligation to comply with the settlement is "part of the order of dismissal-either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994) (internal citations omitted). In this case, the Court explicitly retained jurisdiction "to resolve disputes concerning the memorialization of this settlement agreement ." [Doc. 45.] The Court thus has continuing jurisdiction to enforce the terms of the Mediation Agreement.

Before enforcing a settlement, a district court must conclude that agreement has been reached

---

[3/] Here the Court only considers the Mediation Agreement. Neither Wells Fargo nor the Happs objected to its filing on this Court's docket.

Case No. 1:11-CV-02494
Gwin, J.

on all material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir.1988). Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed. *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir.1973). However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Thus, summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement. *Kukla*, 483 F.2d at 621; *cf.*, *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (recognizing that summary proceedings may result in inequities when a dispute exists as to a material term).

The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement. *Brock*, 841 F.2d at 154; *Kukla*, 483 F.2d at 621 (observing that the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing).

Here no evidentiary hearing is required because the record shows that Wells Fargo and the Happs agreed about the material terms, and all that remained was to sort out the non-material details and put the agreement in writing. Magistrate Judge Vecchiarelli was clear that the agreement reached at the mediation conference was "a binding and enforceable settlement agreement" that was "entered into [by] all the parties." [Doc. 44 at 2-4.] Further, Magistrate Judge Vecchiarelli asked the parties "is there any sort of gaping material issue that hasn't been addressed?" [*Id.* at 13.] The parties agreed that there were none. [*Id.*] Moreover, each party expressly agreed to the terms of the

Case No. 1:11-CV-02494
Gwin, J.

settlement on the record. [*Id.* at 13-16.] In other filings with the Court, the Happs and West Liberty recognized that "Wells Fargo and Happ-Defendants reached a settlement." [Doc. 48-1 at 2.] Similarly, Wells Fargo acknowledges that the parties "agreed to material terms of settlement . . . ." [Doc. 47-1 at 1] While the settlement was contingent on the Happs' right to rescind the Mediation Agreement by September 10, 2012, [doc. 44 at 2,] the Happs chose not to exercise this right.

Furthermore, the objective acts of Wells Fargo and the Happs reflect that an agreement had been reached. Neither the Happs nor Wells Fargo objected to the filing of the settlement transcript on the Court's docket. Instead the parties communicated to the Court that all issues had been resolved. [Doc. 45.] Further, neither party objected when the Court marked the docket settled and dismissed the claims with prejudice. [*Id.*]

The Court finds that the parties reached a settlement at the September 6, 2012, mediation with Magistrate Judge Vecchiarelli. The terms of that settlement are reflected only in the Mediation Agreement. [Doc. 44.] Now the Court chooses to enforce that agreement. *See Aro Corp.*, 531 F.2d at 1371 (finding that it "is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them").

Furthermore, the Court finds that Wells Fargo and the Happs have released their claims pending at the time of the Mediation Agreement. *See Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir.2001); *see also Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir.1964) (finding the dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties).

Mr. Happ has 180 days from the date of this order, December 4, 2012, to sell the Secured Property for more than $275,000. If Mr. Happ sells the Secured Property, he is liable for any

Case No. 1:11-CV-02494
Gwin, J.

deficiency owed on the loan, including accruing interest during the sale period. Wells Fargo will reduce that deficiency by a credit of $60,000. Further, Wells Fargo will fund Mr. Happ's liability on the deficiency with a note issued to Mr. Happ, payable over a term of six years at the rate of 7.5% interest per year. The commission costs for the sale, which the parties agree should be between 3% and 5%, shall be split evenly by the parties. Mr. Happ is responsible to pay the taxes on the Secured Property. Mr. Happ can finance the taxes and his half of the commission through the same note issued by Wells Fargo to pay the deficiency balance. Wells Fargo will issue an IRS Form 1099 for the credit given to Mr. Happ. If he has not already done so, Mr. Happ must convey a deed in lieu of foreclosure that will be held in escrow by a third party for Wells Fargo.

If Mr. Happ does not sell the Secured Property as outlined above, Wells Fargo may file the deed in lieu of foreclosure. The Happs must vacate the Secured Property within 30 days from the date Wells Fargo files the deed in lieu. Mr. Happ will be responsible for the full deficiency under the loan, plus the taxes owed at that time and half the commission costs for the sale, less the appraised value of the Secured Property ($275,000), and less a $60,000 credit from Wells Fargo—all of which may be financed through a note issued by Wells Fargo for six years at 7.5% interest per year. Wells Fargo will issue an IRS Form 1099 for the credit given to Mr. Happ.

### III. Conclusion

For the reasons above, Plaintiff Wells Fargo's motion to enforce the settlement is **GRANTED** to the extent it requests enforcement of the terms contained in the Mediation Agreement. As a result, Defendant Happs' motion to seal documents, motion for extension of time,

Case No. 1:11-CV-02494
Gwin, J.

and motion to enforce the parties' agreement to dismiss are moot and are thus **DENIED**.

      IT IS SO ORDERED.

Dated: December 5, 2012                                s/ *James S. Gwin*
                                                                          JAMES S. GWIN
                                                                          UNITED STATES DISTRICT JUDGE